**UNITED STATES of America, Plaintiff,**

v.

**$38,394 U. S. CURRENCY, Defendant.**

**No. 80 C 3610.**

United States District Court,
N. D. Illinois, E. D.

Oct. 17, 1980.

Thomas P. Walsh, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Thomas R. Mulroy, Jr., Gail A. Niemann, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiff United States of America ("the government") instituted this forfeiture proceeding pursuant to 21 U.S.C. § 881(a), alleging that:

1. Government agents had seized $38,394 ("the currency") from Apartment 304 at 4734 West Washington, Chicago, Illinois, while "acting under authority of law."

2. Alternatively, the currency was furnished or intended to be furnished in exchange for a controlled substance in violation of federal law or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title 21, Chapter 13 of the United States Code.

Henry White ("White") has filed a claim of ownership interest in the currency and has moved for summary judgment, asserting that this Court's ruling in a prior action precludes forfeiture of the currency in this action. For the reasons discussed below, White's motion is granted.

### The Facts

On March 12, 1980 White and three other persons were arrested on drug charges and gun possession charges in a first floor apartment at 4734 West Washington. Immediately thereafter government agents searched Apartment 304 in the same building, found the currency in Crown Royal bags in a closet of that apartment and took possession of the currency. Prior to the trial of White and his co–defendants under the indictment charging the substantive offenses, White filed a motion under Fed.R. Crim.P. 41(e) for the return of the currency.

During the pre–trial hearing on that motion the parties offered conflicting evidence as to White's consent or the lack of consent for the search and as to the circumstances of the search. On July 9, 1980 this Court ordered the currency returned to White because it had been illegally seized.[1] This forfeiture action was promptly filed by the government.

### Discussion

In support of his motion for summary judgment White relies on the transcript of the pre–trial proceeding in the criminal case and invokes the doctrine of collateral estoppel. In response the government asserts the inapplicability of collateral estoppel because, in its view:

1. the issues adjudicated in the prior proceeding are not dispositive of the present claim; and

2. the government did not have the opportunity to litigate the forfeiture issues fully in the prior proceeding.

Just as in the earlier proceeding, the Court views the parties as having failed to focus, at least in part, on the precise issues in the case. Although each party has phrased the collateral estoppel question solely in terms of whether "probable cause" was litigated earlier, the actual language of the Complaint—which defines the government's burden—is that the government's agents seized the currency "acting under authority of law."

Were that not the case—were the narrow issue here that relating to claimed relitigation of "probable cause"—White's motion for summary judgment would have to be denied. There is no question that the Court's decision in the earlier proceeding necessarily involved a holding that the government lacked probable cause to seize the currency *as an incident to White's ar-*

rest. But the issue sought to be litigated here, though also expressed as a question of "probable cause," is not necessarily limited to the same question. Like *Animal Farm*, in which all animals are equal but some are more equal than others, it does not necessarily follow that probable cause is probable cause is probable cause.[2] In this forfeiture proceeding the question characterized as "probable cause" is whether (21 U.S.C. § 881(b)(4)) there was at the time the Complaint was filed "probable cause to believe that the [currency] has been used or is intended to be used in violation of" the chapter dealing with drug offenses. *That* question was plainly not litigated in the prior proceeding.

But the matter does not end with that conclusion. This Court *did* specifically hold in the earlier proceeding that the seizure was *illegal*. *United States v. One Residence and Attached Garage*, 603 F.2d 1231, 1234 (7th Cir. 1979):

> Property of private citizens simply cannot be seized and held in an effort to compel the possessor to "prove lawful possession."

Accordingly collateral estoppel unquestionably operates to bar the government from reasserting that the seizure was "under authority of law." Thus if Complaint Paragraph 2 is necessary to the government's cause of action, the Complaint must be dismissed and the Court's order for delivery of the currency to White, entered in the earlier proceeding, controls.

 That conclusion in turn leads to the question whether the government is then free simply to reinstate new forfeiture proceedings. It is a necessary element of a forfeiture action (an *in rem* proceeding) that the government have possession of the property sought to be forfeited. Here the government presently has such possession, but only as the result of what has been

---

1. This Court specifically ruled that it was unnecessary to resolve the question of consent or other matters involving the *search*, given its holding that the *seizure* was illegal. Thus the government's memorandum, which at page 4 describes the Court's holding ("Even if the agents who seized the currency did not obtain consent for the search, rendering the subsequent seizure invalid . . . .), poses a false predicate that necessarily flaws the balance of its analysis.

2. Of course the Court extends apologies to Gertrude Stein as well as to George Orwell.

determined (conclusively for purposes of this proceeding, by reason of collateral estoppel) to be its own illegal seizure, a violation of White's Fourth Amendment rights. But for that illegal seizure the government would not have the possession that is a condition precedent to a forfeiture action.

This Court will not permit the government to take advantage of its own illegal conduct to forfeit a citizen's property, nor to bootstrap itself by the return and prompt reseizure of the property (whose present location it would have no knowledge of but for its own unlawful conduct in the initial seizure). See *United States v. One 1976 Cadillac Seville*, 477 F.Supp. 879, 882, 884–85 (E.D.Mich.1979).[3]

### Conclusion

Accordingly White's motion for summary judgment is granted, this action is dismissed with prejudice and the government is directed to return the currency to White forthwith.

**3.** White relies heavily on *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), reapproved in *United States v. Janis*, 428 U.S. 433, 447 n.17, 96 S.Ct. 3021, 3028 n.17, 49 L.Ed.2d 1046 (1976). That decision is inapposite here because the propriety of the auto forfeiture in that case was dependent on its having been used in the illegal transportation of liquor, a charge that Pennsylvania could not prove because the evidence was fatally tainted by a Fourth Amendment violation. By contrast, in this case there has been no prior determination that the currency (if it were in White's possession at the time a new forfeiture complaint was filed) could not be lawfully seized at this time. Despite the inapplicability of *One 1958 Plymouth Sedan* as direct precedent, the approach it takes to tainted forfeiture proceedings is similar to what this Court employs here.